IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

————————

No. 11-1187

————————

FILED

**November 21, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

APPALACHIAN REGIONAL HEALTHCARE, INC.,
D/B/A BECKLEY ARH HOSPITAL,
Plaintiff Below, Petitioner

v.

WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES;
KAREN L. BOWLING, Secretary, in her official capacity and not individually; WEST
VIRGINIA BUREAU FOR MEDICAL SERVICES; NANCY ATKINS, Commissioner,
in her official capacity and not individually,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Civil Action No. 10-C-2311

AFFIRMED

_____

Submitted: September 13, 2013
Filed: November 21, 2013

Michael S. Garrison, Esq.                     Patrick Morrisey
Spilman Thomas & Battle, PLLC                 Attorney General
Morgantown, West Virginia                     Kim Stitzinger Jones
Counsel for the Petitioner                    Assistant Attorney General
                                              Charleston, West Virginia
Stephen R. Price, Sr., Esq.                   Counsel for the Respondent
Wyatt, Tarrant & Combs, LLP
Louisville, Kentucky
Appearing *pro hac vice* for the Petitioner

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.       "Appellate review of a circuit court's order granting a motion to dismiss a complaint is de novo."  Syl. pt. 2, *State ex rel. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2.       "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)."  Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

3.       "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review."  Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

4.       "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action:  (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is

i

consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government." Syl. pt. 1, *Hurley v. Allied Chemical Corp.*, 164 W. Va. 268, 262 S.E.2d 757 (1980).

5.     W. Va. Code §§ 9-15-16 (1988) and 16-29B-20 (1997) do not provide for an express or implied private cause of action by a Medicaid provider for judicial review of reimbursement rates for medical services.

Benjamin, Chief Justice:

In this proceeding we are presented with the question of whether there is a private cause of action for a hospital accepting Medicaid patients and Medicaid payments for unreasonable rate-setting. The Circuit Court of Kanawha County dismissed the complaint of the petitioner, Appalachian Regional Healthcare, Inc., d/b/a Beckley ARH Hospital ("Beckley ARH"), in a lawsuit against the respondents seeking a remedy for inadequate Medicaid reimbursement rates. The respondents are the West Virginia Department of Health and Human Resources and its Secretary, Karen L. Bowling, and the West Virginia Bureau for Medical Services ("BMS") and Nancy Atkins, its Commissioner (collectively referred to as "the Department").[1] The circuit court found that the complaint of Beckley ARH failed to state a claim upon which relief could be granted, and dismissed the case pursuant to W. Va. R. Civ. P. 12(b)(6).

After a thorough review of the record presented for consideration, the briefs, the legal authorities cited and the argument of the parties, we find that W. Va. Code §§ 9-15-16 (1988) and 16-29B-20 (1997) do not provide for an express or implied private cause of action by a Medicaid provider for judicial review of reimbursement rates

---

[1] While this case was pending, Karen L. Bowling replaced Michael J. Lewis, M.D., Ph.D., as Secretary of the Department. *See* W. Va. R. App. Proc. 41(c) (explaining procedure for substitution of parties who hold public office).

1

for medical services. We affirm the circuit court order dismissing the petitioner's claims for failure to state a claim upon which relief may be granted.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Appalachian Regional Healthcare, is a not-for-profit Kentucky corporation that operates a number of hospitals in Kentucky and West Virginia, including Beckley Appalachian Regional Hospital ("Beckley ARH") in Beckley, West Virginia. Beckley ARH is a voluntary provider of medical services through the Medicaid program pursuant to an agreement executed between it and the BMS. Medicaid is a cooperative federal-state program in which the federal government provides financial assistance to the states. Participating states match federal funds with state funds and use this money to administer each state's Medicaid program. The Medicaid program provides medical assistance to eligible recipients.[2] This assistance is in the form of direct payments to participating providers, such as Beckley ARH, for services rendered to Medicaid recipients. *See* 42 C.F.R. § 430.0 (1988).

The federal agency empowered with the administration of Medicaid is the Centers for Medicare and Medicaid Services ("CMS"). To participate in the Medicaid program, states must create a plan for medical assistance ("State Plan"), and that plan

[2]Examples of eligible recipients include indigent persons, disabled persons, impoverished persons as well as income-eligible persons with dependent children.

2

must be approved by the Secretary of the United States Department of Health and Human Services. The requirements for each State Plan are enumerated in 42 U.S.C. § 1396a (2006) and 42 C.F.R. §§ 430 and 447 (1978). The requirement pertinent to this appeal is the requirement that a single state agency be established or designated as the administrator of the State Plan. 42 U.S.C.. 1396a(5) states, in pertinent part:

> A State plan for medical assistance must —
> (5) either provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan; or provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan . . . .

Therefore, while the federal government through its grants provides financial assistance to the states for the payment and provision of medical services to those covered by Medicaid, the individual states administer their programs through a single, designated agency and pursuant to the State Plan.[3] In West Virginia, the administering state agency is the BMS, pursuant to W. Va. Code § 9-1-2(n) (1998).

One of the BMS's statutory duties is to establish Medicaid reimbursement rates in compliance with federal law for medical and laboratory services rendered to Medicaid recipients. Once these services are determined, the BMS then establishes the reimbursement rate for these medical providers, using methodology and standards developed by each state. The states then submit the reimbursement rates to the federal

---

[3] The states likewise provide funding to the Medicaid program, but a majority of the state's Medicaid funding comes from federal resources.

3

government through CMS, which approves or disapproves the State Plan. *See* 42 U.S.C. 1396a(a)(13)(A).

Beckley ARH entered into a provider agreement with BMS and agreed to be a Medicaid provider of acute care inpatient and psychiatric services. Part of the agreement was that Beckley ARH would be reimbursed as per the established Medicaid rates under the State Plan for services rendered. The specific reimbursement rates were not included in the agreement. The contract did not state that Beckley ARH would be reimbursed all of its costs for treating Medicaid beneficiaries.

On December 27, 2010, Beckley ARH filed a complaint in the Circuit Court of Kanawha County, alleging, *inter alia*, that the Medicaid rates being paid to it were inadequate to cover the cost of providing services to Medicaid patients. Beckley ARH contended that the Department established grossly inadequate reimbursement rates for its services. In 2009, Beckley ARH incurred costs for treating Medicaid patients of $14.7 million, but received reimbursements from Medicaid in only the amount of $11.9 million. The petitioner sought declaratory, injunctive and other legal or equitable relief in accordance with state and federal law.

The petitioner's complaint relied upon two West Virginia statutes, §§ 16-29B-20 and 9-5-16, and the complaint contained ten grounds: (1) the Department failed to apply the proper standards pursuant to W. Va. Code §§ 16-29B-20 and 9-5-16 in

setting Medicaid reimbursement rates; (2) a writ of mandamus should issue to require the Department to reimburse it at rates that are "adequate and reasonable and in keeping with statutory standards"; (3) BMS failed to take into account the petitioner's unreimbursed costs of providing care to recipients of the Public Employee's Insurance Agency ("PEIA"), and therefore, the petitioners are entitled to a declaration that W. Va. Code § 16-29B-20 must be followed by the Department; (4) petitioners are entitled to a declaration of rights stating that the respondent's Medicaid rates were unreasonable; (5) the Due Process Clause of the West Virginia Constitution was violated because the inadequate Medicaid rates disproportionately affect the petitioner, as a mandatory provider for low-income and indigent patients, because of the large proportion of Medicaid patients that it treats; (6) the Equal Protection clause of the West Virginia Constitution was violated because the State provided special payments to state-owned hospitals that received Medicaid reimbursement at the same rate at which the petitioner was reimbursed; (7) the petitioner is entitled to a declaratory judgment that the Department's rule-making authority in establishing Medicaid reimbursement rates was exercised in a manner to interfere with, impair or threaten to interfere with or impair the legal rights or privileges of Beckley ARH; (8) the Department breached the contract by failing to pay adequate and reasonable reimbursements pursuant to West Virginia Code; (9) it is inequitable, based on a theory of quantum meruit, for the Department to obtain the benefit of medical services to Medicaid beneficiaries without making adequate and reasonable payment for services; and (10) the Department unilaterally set rates for reimbursement, and in doing so, failed to establish fair and reasonable rates.

5

The Department filed a motion to dismiss Beckley ARH's complaint pursuant to W. Va. R. Civ. P. 12(b)(6), arguing that the complaint failed to state a ground upon which relief could be granted. The circuit court entered an order on July 19, 2011, granting the Department's motion to dismiss.

In its order, the circuit court made a number of findings and conclusions. First, the circuit court found that Beckley ARH had voluntarily entered into a Medicaid provider agreement with the Department for the provision of acute care inpatient and psychiatric services. As part of this agreement, Beckley ARH agreed to accept the rates set for reimbursement by the Department as payment in full for services rendered, so long as the reimbursement rates were set in conformance with established rates, fee schedules and payment methodologies approved by CMS.

The circuit court also found that neither W. Va. Code § 16-29B-20 nor § 9-5-16 required the respondent to establish Medicaid rates that were adequate, reasonable or in accordance with those statutory sections. Furthermore, the court found that the West Virginia Health Care Authority ("HCA") did not have the authority to review or set Medicaid reimbursement rates pursuant to W. Va. Code § 16-29B-20(a)(1) and (3), and that BMS has that sole authority. The court found that Beckley ARH admitted that BMS was solely responsible for the setting of Medicaid reimbursement rates.

6

The circuit court found no merit in Beckley ARH's claim for recovery based upon *quantum meruit* because there was an express contract between Beckley ARH and the Department in which Beckley ARH agreed to accept the Medicaid reimbursement rate. The circuit court found that any state-law based requirement to deal in good faith and fairly was preempted by the federal law.

From this order Beckley ARH pursues the instant appeal.

## II.

## STANDARD OF REVIEW

This appeal is based upon the circuit court's granting of a motion to dismiss for failure to state a claim upon which relief may be granted. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. pt. 2, *State ex rel. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

> The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).

This appeal also requires us to interpret several statutes. We have further held in syllabus point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415

7

(1995), that "[w]here the issue on an appeal from the circuit court is clearly a question of

law or involving an interpretation of a statute, we apply a *de novo* standard of review."

## III.

## ANALYSIS

Beckley ARH asserts nine separate assignments of error in this appeal.[4]

However, upon our review, we recognize that there is a threshold issue: whether W. Va.

---

[4] The assignments of error, in the order presented by the petitioner, are as follows:

> A. The circuit court erred in signing without modification the order drafted by the Department, which stripped W. Va. Code §§ 9-5-16(a) and 16-29B-20 of all meaning and functions, leaving the Department with unfettered authority to set Medicaid rates in the arbitrary and capricious manner they have employed.
> B. The circuit plainly erred in holding that Beckley ARH does not have a clear legal right to challenge the Department's methodology of setting Medicaid reimbursements, an error that affected the circuit court's handling of the entire complaint.
> C. The circuit court erred in holding that federal law preempted a state court; if allowed to stand, the circuit court's interpretation of West Virginia law would raise federal supremacy clause issues and claims.
> D. The circuit court erred in finding that Beckley ARH could not have breached the provider agreement by failing to establish Medicaid rates that did not meet the requirements of state and federal law.
> E. The circuit court clearly erred in construing the federal prohibition against balance billing Medicaid patients in 42 C.F.R. § 447.15 to mean that the Department could set

(continued . . .)

8

Code §§ 9-5-16(a) and 16-29B-20 provide a statutory basis to challenge to Medicaid reimbursements rates. Upon our review, we find that these statutes do not provide the petitioner with a private cause of action, express or implied, to challenge the Medicaid reimbursement rates. To the extent that the petitioner's assignments of error rely on the existence of a private statutory cause of action based upon these statutes, it is unnecessary that we address them in full in this opinion.

### A.    W. Va. Code § 9-5-16(a) does not provide a private cause of action

---

Medicaid rates at any level they so choose, no matter how low the rates were and even if they were in violation of statutory standards.

F. The circuit court erred in holding the Federal Upper Payment Limit rules in federal regulations that classify government operated hospitals separately from privately operated hospitals served as a reasonable classification to pay West Virginia government hospitals higher Medicaid reimbursement that similarly situated privately owned hospitals.

G. The circuit court erred in finding that none of the ten counts in the complaint could provide relief for the Department's failure to following statutory requirements in setting the hospital Medicaid rates;

H. The circuit court applied the wrong standards in dismissing the complaint under W. Va. R. Civ. P. 12(b)(6);

I. The circuit court misapplied W. Va. R. Civ. P. 12(b)(6) and, considering matters outside the pleadings, effectively converting the Department's motion to one for summary judgment under W. Va. R. Civ. P. R. 56, while improperly deciding genuine issues of material fact.

9

Beckley ARH asserts that W. Va. Code § 9-5-16(a) provides a basis for an action against the Department for the establishment of appropriate Medicaid reimbursement rates. W. Va. Code § 9-5-16(a) states, in full:

(a) It is the purpose of the Legislature in enacting this section to encourage the long-term well planned development of fair and equitable reimbursement methodologies and systems for all health care providers reimbursed under the medicaid program in its entirely, and to ensure that reimbursement for services of all such health care providers is determined without undue discrimination or preference and with full consideration of adequate and reasonable compensation to such health care providers for the costs of providing such services.

(b) In order that the Legislature become better informed as to these matters, and appropriately appraise and balance the interests among all such health care providers and between all such health care providers and the interests of all the state's citizenry, the Legislature hereby directs the Commissioner of the Department of Human Services to identify, explore, study and consider the potential benefits and risks associated with the adoption of alternative and emerging and state-of-the-art concepts in reimbursement methodology for such health care providers.

(c) Toward this end, the commissioner shall conduct inquiries and hold hearings in order to provide all health care providers and other interested persons the opportunity to comment. In carrying out the provisions of this section, the commissioner shall have jurisdiction over such persons, whether such health care providers or not, as may be in the opinion of the commissioner necessary to the exercise of the mandate set forth in this section, and may compel attendance before the department, take testimony under oath and compel the production of papers or other documents. Upon reasonable requests by the commissioner, all other state agencies shall cooperate in carrying out the provisions of this section.

(d) The Commissioner shall make monthly reports to the Joint Committee on Government and Finance, created by article three [§§ 4-3-1, *et seq.*], chapter four of this code, or a

10

subcommittee designated by the Joint Committee, and at the completion of such identification, exploration, study and consideration, present to the Joint Committee or its subcommittee, no later than the first day of December, one thousand nine hundred eighty-eight, a summary report which shall set forth all activities pursuant to the mandate of the Legislature as set forth herein, any policy decisions reached and initiatives undertaken and findings and conclusions as well as any recommendations for legislation. The Commissioner shall also make such full report to the Legislature no later than the first day of the regular session of the Legislature in the year one thousand nine hundred eighty-nine.

(e) Nothing in this section shall be construed to give the Legislature any jurisdiction over the Medicaid program or its operations.

The petitioner relies solely on subsection (a) to support its contention that it may challenge rate setting.

There is no language within W. Va. Code § 9-5-16(a) or the remainder of W. Va. Code § 9-5-16 that provides an explicit judicial remedy. Because the statutory section does not provide for an express private cause of action, we must proceed to determine whether the section provides for an implied private cause of action. In syllabus point 1 of *Hurley v. Allied Chemical Corporation*, 164 W. Va. 268, 262 S.E.2d 757 (1980), we enumerated a four-prong test to determine whether a statute gives rise to a private cause of action. We held:

> The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must

11

be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government.

The first consideration is whether Beckley ARH is a member of the class for whose benefit the statute was enacted. Because Beckley ARH is a "health care provider" within the meaning of W. Va. Code § 9-5-16(a), and because the purpose of W. Va. Code § 9-5-16 is "to ensure that reimbursement for services of all such health care providers is determined . . . with full consideration of adequate and reasonable compensation," we conclude that Beckley ARH is a member of the class for whose benefit the statutes was enacted. The first prong weighs in favor of the petitioner.

The second consideration is legislative intent. The express purpose of W. Va. Code § 9-5-16 is to gather information used to set the methodologies for reimbursement rates. This information was to be included in a report to the Legislature in 1989.[5] Nothing within this statute indicates an express or implied intent on the part of the Legislature to provide a private cause of action for rate setting. The statute is solely focused on information gathering. Therefore, the second prong weighs against the petitioner.

---

[5] W. Va. Code § 9-5-16(d), quoted *supra*, required the Department to make monthly reports to the Legislature, culminating in a full and final report due no later than the first day of the legislative session in 1989.

The third consideration is whether a private cause of action is consistent with the underlying purposes of the legislative scheme. Again, we note that the express purpose of W. Va. Code § 9-5-16 is information gathering. Therefore, this prong also weighs against the petitioner.

The fourth and final consideration is whether a private cause of action would intrude into an area delegated exclusively to the federal government. We conclude that it does not. The focus of W. Va. Code § 9-5-16 is on developing fair rates in West Virginia. Therefore, the fourth prong weighs against the petitioner because the federal government has relegated rate-setting for Medicaid reimbursements to the states.

In view of the lack of legislative language establishing an express cause of action and our consideration of the *Hurley* factors, we conclude that W. Va. Code § 9-15-16 does not provide for an express or implied private cause of action by a Medicaid provider for judicial review of reimbursement rates for medical services. Therefore, the petitioner may not use this code section as the basis for its cause of action.

### B. W. Va. Code § 16-29B-20 does not provide a private cause of action

Beckley ARH next contends that W. Va. Code § 16-29B-20 provides a basis for judicial review of Medicaid reimbursement rates. W. Va. Code § 16-29B-20 relates to the HCA and its duties to establish hospital rates throughout the state.

13

The pertinent part of W. Va. Code § 16-29B-20 upon which Beckley ARH relies relates to the setting of these rates. This section establishes the role of the HCA in reviewing rate proposals by hospitals, including Beckley ARH. A directive toward the setting of rates of payment for Medicaid services is contained in subsection (3) of this section. It states:

> The rates of payment for Medicaid are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated hospitals subject to the provisions of this article. The rates shall take into account the situation of hospitals which serve disproportionate numbers of low income patients and assure that individuals eligible for Medicaid have reasonable access, taking into account geographic location and reasonable travel time, to inpatient hospital services of adequate quality.

Beckley ARH admits that BMS is the federally authorized and designated state agency in charge of administering the Medicaid program. The Department argues that the HCA never established Medicaid reimbursement rates and that BMS had this responsibility.[6] Beckley ARH contends that in reading this statutory section along with

---

[6] The record contains the affidavits of one former and the current chairperson of the HCA who state that at no time did the Authority establish or regulate Medicaid reimbursement rates. Beckley ARH argues in one of its assignments of error that the circuit court wrongfully relied upon these affidavits, which are outside of the complaint, in granting the Rule 12(b)(6) motion to dismiss filed by the Department. We do not rely upon these affidavits in making our determination of whether these statutes provide the basis for a state-based claim for increased reimbursements for Medicaid services as argued by Beckley ARH.

14

W. Va. Code § 9-5-16, the Legislature intended for Medicaid providers to be compensated "with full consideration of adequate and reasonable compensation to such health care providers for the costs of providing such services."[7]

Upon our review of the applicable authority, the setting of reimbursement rates is delegated by statute to the Department, not the HCA. BMS is the single state agency designated by CMS to administer the Medicaid program in West Virginia. Therefore, while the HCA rate-setting statutes discuss that agency's role in setting

---

[7] Beckley ARH contends that W. Va. Code §§ 9-5-16 and 16-29B-20 were enacted by the Legislature in conjunction with the Boren Amendment. The Boren Amendment was passed by the U.S. Congress in 1980 and was codified in 42 U.S.C. § 1398a(a)(13)(A) (1982 ed, Supp V). The Boren amendment required State Plans for medical assistance to be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" participating in the Medicaid program. In *Wilder v. Virginia Hospital Association*, 111 S.Ct. 2510 (1990), the Supreme Court held that there was no provision in the Boren Amendment that would foreclose a private judicial remedy for enforcement of the Boren Amendment. Furthermore, the Supreme Court found that the Boren Amendment created a substantive federal right to the adoption of reasonable and adequate reimbursement rates. This amendment allowed affected providers to sue for additional payments for Medicaid services provided to beneficiaries pursuant to 42 U.S.C. § 1983.

In 1997, the Boren Amendment was repealed by the adoption of the Balanced Budget Act of 1997. Now under 42 U.S.C. § 1396a(a)(30)(A), the State Plan for Medicaid must contain methods and procedures to "safeguard against unnecessary utilization of . . . . [Medicaid] services and . . . . to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available . . . at least to the extent that such care and services are available to the general population." BMS must use a public process for determining reimbursement rates, to publish the proposed and final rates, as well as the methodologies underlying the rates and the justification for the rates and give interested parties a reasonable opportunity for review and comment on the proposed rates, methodologies and justifications.

15

Medicaid reimbursement rates, W. Va. Code § 9-2-6(10) (2005) clearly delegates that duty to the Department.[8]

The Department argues that federal law preempts the statutes upon which Beckley ARH relies. In *Harrison v. Skyline Corp.*, 224 W. Va. 505, 510, 686 S.E.2d 735. 740 (2009), this Court discussed preemption questions, stating:

> We most recently discussed the analysis applied to preemption questions in *Morgan v. Ford Motor Company*, 224 W.Va. 62, 680 S.E.2d 77 (2009). As related in *Morgan*, the preemption doctrine has its roots in the supremacy clause of the United States Constitution and is based on the premise that federal law can supplant inconsistent state law. *Id*. at Syl. Pt. 2. However, preemption is not automatic, especially in areas such as health and safety which have traditionally been regulated by the states. *Id*. at Syl. Pt. 3. Thus for preemption to occur, there has to be convincing evidence that Congress intended a federal law to supersede a state law. Such Congressional intent may be express or implied in the language of the statute under consideration. *Id*. at Syl. Pts. 4 and 5. Preemption may be implied when the pervasive regulatory scheme of a federal Act leaves no room for state regulation (field preemption), or where compliance with both federal and state regulations is physically impossible or state regulation otherwise is an obstacle to accomplishing congressional objectives (conflict preemption). *Id*. at Syl. Pt. 7. In brief, the first step in a preemption analysis is to determine if the federal Act in question expressly bars state action. If state involvement is not expressly barred by the

---

[8]  In 2013, this section of the W. Va. Code was revised, and the designation of BMS as the single state agency for the administration of Medicaid programs is now contained in W. Va. Code § 9-2-6(12).

16

terms of the federal statute, the second step is to determine whether field preemption or conflict preemption may be implied from the construction of the statute or federal standards promulgated thereunder.

Our analysis of the federal statutes and regulations indicates that Medicaid rate-setting is field preempted by federal law. For the purposes of administering all state aspects of the Medicaid program, CMS requires that each state designate a single state agency. As indicated herein, BMS is that single state agency. CMS's designation necessarily precludes the involvement of the HCA. Furthermore, W. Va. Code § 9-2-3 (1970) provides direct support for this preemption, by acknowledging that the State's participation in a cooperative assistance program such as Medicaid requires compliance with the applicable federal laws, rules and regulations. W. Va. Code § 9-2-3 states:

> The State assents to the purposes of federal-state assistance, accepts federal appropriations and other forms of assistance made under or pursuant thereto, and authorizes the receipt of such appropriations into the state treasury and the receipt of other forms of assistance by the department for expenditure, disbursement, and distribution by the department in accordance with the provisions of this chapter and the conditions imposed by applicable federal laws, rules and regulations.

We have held that "[w]here states have traditionally regulated conduct in a given area, field preemption may only be founded on clear and manifest congressional

17

intent to alter that tradition and occupy the field." *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). By enacting a statutory scheme that allows the states to establish rates in accordance with federal laws and regulation, the federal government has clearly manifested its intention that Medicaid reimbursement rates are preempted by the federal legislation. 42 U.S.C. § 1396a establishes this field preemption as it relates to the state statutes upon which Beckley ARH relies. Therefore, Beckley ARH cannot maintain a cause of action related to rate-setting under W. Va. Code § 16-29B-20.

### D. The Circuit Court Correctly Dismissed the Case

In *Highmark West Virginia Inc. v. Jamie*, 221 W. Va. 487, 491–492, 655 S.E.2d 509, 513–514 (2007), we discussed this Court's review of the dismissal of a complaint for failure to state a claim upon which relief may be granted.

> In reviewing a Rule 12(b)(6), dismissal, assistance in appraising the sufficiency of the claim or counterclaim is provided by Rule 8(a)(1) of the West Virginia Rules of Civil Procedure which requires, in a pleading, "a short and plain statement of the claim showing that the pleader is entitled to relief." Subsection (e) of Rule 8 states that each averment of a pleading shall be "simple, concise and direct." As observed in *Scott Runyan Pontiac-Buick* (citation omitted): "Rule 8 of the Rules of Civil Procedure requires clarity but not detail * * * Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is." 194 W.Va. at 776, 461 S.E.2d at 522. Thus, while bald statements or a carelessly drafted pleading will not survive a Rule 12(b)(6) motion to

18

dismiss, *Fass v. Nowsco Well Service*, 177 W.Va. 50, 52, 350 S.E.2d 562, 564 (1986), a circuit court should not dismiss a claim "merely because it doubts that the plaintiff will prevail in the action." *John W. Lodge Distributing Co. v. Texaco*, 161 W.Va. 603, 605, 245 S.E.2d 157, 159 (1978). The complaint is to be construed in the light most favorable to the plaintiff. *Price v. Halstead*, 177 W.Va. 592, 594, 355 S.E.2d 380, 383 (1987); *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. at 538, 236 S.E.2d at 212.

In the case before us, in the light most favorable to Beckley ARH, there is no valid claim for relief propounded in any of the ten counts of the complaint. Beckley ARH entered into a voluntary agreement with the Department to provide medical services to Medicaid beneficiaries. The contract did not specify a particular reimbursement rate. Beckley ARH agreed to accept that rate. Beckley ARH now attempts through this action to create a mechanism for challenging the Medicaid reimbursement rate, under a number of theories (quantum meruit, due process, equal protection, breach of contract), based upon two code sections unrelated to the Department's role in establishing Medicaid reimbursement rates. Neither statute directly or indirectly provides for a private cause of action against the Department to address the issue of Medicaid reimbursements.

This is not a question of dismissing a case because it is doubtful that Beckley ARH would prevail; this dismissal is based upon the absence of a statutory basis upon which to pursue any claims. Beckley ARH argues that dismissal of its complaint prior to discovery left contested material facts unresolved. We disagree and we affirm the circuit court's dismissal of Beckley ARH's complaint.

19

Our resolution of this case is in accord with the Supreme Judicial Court of Massachusetts' recent holdings in *Boston Medical Center v. Secretary of the Office of Health and Human Services*, 974 N.E.2d 1114 (2012). That case involved the complaint of hospitals providing Medicaid services against the Massachusetts' equivalent of West Virginia's BMS for reimbursement rates that did not equal the financial requirements of providing care to recipients of medical assistance. The hospitals sued on violations of several Massachusetts statutes regarding the establishment of reimbursement rates for Medicaid services. The Massachusetts court affirmed the dismissal of the hospitals' complaint for failure to state a claim upon which relief could be granted, finding that the statutory scheme did not create a private right of action to challenge the reasonableness of Massachusetts' Medicaid program (MassHealth) payment rates. The Massachusetts court considered "whether it would be reasonable as a matter of public policy for the Legislature to have intended a statutory duty without a judicial remedy" and concluded that judicial review of a hospital's payment rates would be complex and difficult. The Massachusetts court also found that the Massachusetts legislature did not intend to waive sovereign immunity in a Medicaid reimbursement challenge. *Boston Medical Center*, 974 N.E.2d at 1124.

20

## IV.

## CONCLUSION

For the foregoing reasons, we find no error in the order of the Circuit Court of Kanawha County that dismissed Beckley ARH's complaint against the Department for failure to state a claim upon which relief may be granted. We conclude and hold that W. Va. Code §§ 9-15-16 (1988) and 16-29B-20 (1997) do not provide for an express or implied private cause of action by a Medicaid provider for judicial review of reimbursement rates for medical services. The judgment of the circuit court is affirmed.

Affirmed.