# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael W. Wolford and James C. Nelson**
**Petitioners, Plaintiffs Below**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0963** (Tucker County 14-C-13 and 14-C-14)

**Mountain Top Hunting Club, Inc., Allen Heitz,**
**and Charles Layman**
**Respondents, Defendants Below**


## MEMORANDUM DECISION

Petitioners Michael W. Wolford and James C. Nelson, by counsel Steven L. Shaffer and C. Paul Estep, appeal the August 25, 2014, order of the Circuit Court of Tucker County dismissing their claims against respondents. Respondents Mountain Top Hunting Club, Inc., Allen Heitz, and Charles Layman, by counsel Eric E. Kinder, filed a response in support of the circuit court's order. Petitioners submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 1990, petitioners became members of a private hunting club known as Mountain Top Hunting Club ("Club").[1] Upon becoming members, and each year thereafter, petitioners signed a membership application, which included a provision that a member could be expelled for violating club rules. In 2013, Club rules and regulations contained a provision (known as "Rule 14") which stated that any member of the Club who "slanders, threatens, or commits acts of violence to a member of the Board of Directors, Club Officer or another member" could be permanently expelled from the Club. Rule 14 specifically advised that penalties for each case presented for expulsion would be assessed at the discretion of the board of directors.

In 2013, Petitioner Nelson served as a member of the Board of Directors of the Club.[2] In May of 2013, at a closed board of directors meeting, Respondent Heitz (a member of the Club

---

[1]Mountain Top Hunting Club is a private corporation that leases approximately 58,000 acres, in Tucker, Grant, and Mineral counties, for its members to use for hunting, fishing, and other recreational activities. Mountain Top Hunting Club has approximately 2,500 members.

[2]Although he had previously served as a Club officer, Petitioner Wolford did not hold any such position at all times relevant hereto.

1

who was also hired by the Club to work as a security guard) informed the Club's board of directors that he had been threatened by Petitioner Wolford.[3] Upon hearing this report, the Club's Board of Directors (which included Petitioner Nelson) contacted Petitioner Wolford by telephone and questioned Wolford about the report. Wolford denied making any threats to Respondents Heitz or Layman. The Board of Directors appointed Petitioner Nelson to contact the local police agency to determine if Respondent Heitz had filed a police report. Petitioner Nelson contacted the West Virginia State Police, who informed him that no formal report had been made by either Respondent Heitz or Respondent Layman.

The Board of Directors met again on July 11, 2013, at which time Petitioner Nelson advised the board that according to the police, no report had been made by Respondent Heitz. At the Club's annual membership meeting, held on August 10, 2013, Respondents Heitz and Layman informed the Board of Directors that they made a police report regarding threats made against them by Petitioner Wolford. At that time, a vote regarding the revocation of Petitioner Wolford's membership was taken. By a vote of 80 to 17, Petitioner Wolford's membership was revoked.

At the August 10, 2013, Board of Directors meeting, Petitioner Nelson again advised the Board of his communication with the West Virginia State Police and that no report had been made by Respondents Heitz or Layman. Respondent Heitz then read a statement to the Board accusing Petitioner Nelson of violating Club rules (by making threats to him). Following this meeting, Petitioner Nelson received a letter from the Club advising him that his Club membership was revoked effective August 24, 2013. Petitioner Nelson alleges that the Club had no other board meetings between the August 10, 2013 meeting, and his August 24, 2013, expulsion. Both petitioners deny threatening either Respondent Hetiz or his fellow Club security guard, Respondent Layman, and both petitioners assert that they were denied the opportunity to challenge the claims raised by Respondents Heitz or Layman. On August 20, 2013, Petitioner Nelson wrote to the Club and requested reinstatement to the Club, and again denied making threats to respondent security guards. Petitioner Nelson received no response from the Club.

On March 14, 2014, petitioners filed the instant lawsuit against respondents, alleging breach of contract, defamation and slander,[4] and intentional infliction of emotional distress. On April 15, 2014, the Club and Respondent Heitz filed a motion to dismiss and supporting memorandum (in which Respondent Layman later joined). Petitioners filed a response to respondents' motion to dismiss. A hearing on respondents' motion was held on August 13, 2014. The circuit court, after hearing the arguments of counsel, found that petitioners failed to demonstrate any viable cause of action. Specifically, the court ruled that the Club operates under a system of internal rules and regulations that can result in members being expelled from the

---

[3]In their complaint, petitioners contend that both Respondents Heitz and Layman (who both were members of the Club and worked as security guards) had been threatened by Petitioner Wolford. However, it was only Respondent Heitz who spoke at the May of 2013, Club meeting.

[4]In their complaint, petitioners allege that Respondents Heitz and Layman "have made open, public remarks which have been slanderous towards Wolford and Nelson."

Club. With respect to petitioners' complaints about not being permitted to confront their accusers, the circuit court explained that members of a private club must submit to the Club's rules and that when the Club makes a decision in accordance with its rules, if a member believes the decision is wrong, such a belief does not automatically constitute a breach of the Club's rules.[5]

In entering its August 25, 2014, order dismissing petitioners' claims, the circuit court ruled that there was no breach of contract, finding that it was "apparent from the [c]omplaint that [petitioners] failed to allege any specific provision of their alleged contract that was violated." Further, the circuit court found that the remarks of the Club's security guards were made under a qualified privilege, and that petitioners failed to allege any facts or make any plausible argument that the privilege had been exceeded. As to the petitioners' claims of "outrage," the circuit court found that petitioners failed to plead outrage sufficient to satisfy the threshold showing required under West Virginia law. Petitioners now appeal the August 25, 2014, order to this Court.

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). In syllabus point two of *Appalachian Reg'l Healthcare, Inc. v. W.Va. Dep't of Health and Human Res.*, 232 W.Va. 388, 752 S.E.2d 419 (2013), we reiterated that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (citations omitted). Furthermore, "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and its allegations are to be taken as true." *Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978).

On appeal, petitioners raise two assignments of error. First, they contend that the circuit court erred in ruling that petitioners failed to state a claim upon which relief can be granted. Petitioners contend that they properly alleged three causes of action in their complaint – breach of contract, defamation, and outrageous conduct (also described as intentional infliction of emotional distress). Second, petitioners contend that the circuit court erred in finding no breach of contract, no defamation (based upon a finding that the statements at issue were covered under qualified immunity), and that respondents' conduct did not reach the level of outrageous conduct. Because they are interrelated, we address petitioners' assignments of error together.

As to petitioners' breach of contract claims, it is undisputed that the relationship between the parties herein was contractual in nature. The issue is whether petitioners' complaint alleges that the contract at issue was breached. Upon review of the complaint, it is clear that petitioners do not allege that their expulsion from the Club was the result of a violation of any of the Club's by-laws, rules and regulations.[6] As such, there can be no breach of contract. *See Davis v. State*

---

[5]Petitioners did not allege that their ejection was the result of membership in any legally-protected class (e.g., sex, race, age, national origin).

[6]In their complaint, petitioners aver that the Club has enacted certain bylaws which "govern the operation of the Club."

3

*Farm Fire & Cas. Co.*, No. 12-0985 (W.Va. Supreme Court, June 24, 2013)(memorandum decision) (finding that no breach of contract occurs where all contractual obligations are satisfied).

As to petitioners' allegations that they were entitled to a hearing before the Club or right to an appeal of the Club's decision regarding termination of their memberships, the circuit court ruled that neither an appeal nor a hearing is provided for in the Club's by-laws, rules and regulations. The circuit court further found that because the Club is a private corporation, petitioners do not have a contractual right to due process. *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974). Based on our review of the record before us, we see no error in the circuit court's dismissal of petitioners' claims for breach of contract.

With regard to their defamation claims, petitioners argue that the statements of respondent security guards about petitioners and their alleged threats were false. Petitioners further assert that they clearly set forth in the complaint that the security guards made open public remarks about petitioners and that such remarks were slanderous. Respondents contend that the remarks made by the respondent security guards were privileged under qualified immunity. We have held that "[t]he existence or nonexistence of a qualified privilege occasion . . . in the absence of controversy as to the facts, [is a] question []of law for the court." Syl. Pt. 8, in part, *Belcher v. Wal-Mart Stores, Inc.*, 211 W.Va. 712, 568 S.E.2d 19 (2002) (citations omitted).

In support of their argument, petitioners refer to syllabus point one of *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70 (1983), in which this Court set forth "[t]he essential elements for a successful defamation action by a private individual: (1) defamatory statements; (2) a non-privileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (b) resulting in injury." The *Crump* court reasoned that "[a]lthough motive is irrelevant when an absolute privilege is involved, a bad motive will defeat a qualified privilege defense." 173 W.Va. at 707, 320 S.E.2d at 78. In *Crump*, this Court noted that the primary manner in which a qualified privilege to publish defamatory statements may be defeated is by a showing of actual malice.[7]

Petitioners assert that their complaint clearly states that the security guards made false statements regarding petitioners which caused petitioners injury and damage. As such, respondents' motion to dismiss should have been denied.

---

[7]In *Crump*, we held that "[a] qualified privilege exists when a person publishes a statement in good faith about a subject in which he has an interest or duty and limits the publication of the statement to those persons who have a legitimate interest in the subject matter." 173 W.Va. at 707, 320 S.E.2d at 78. "Qualified privileges are based upon a public policy that it is essential that true information be given whenever it is reasonably necessary for the protection of one's own interest, the interests of third persons or certain interests of the public." *Id.*

Conversely, respondents contend that the circuit court properly dismissed petitioners' claims of defamation after finding that statements of the security guards which were made during a required annual membership meeting, as part of their employment with the Club were entitled to qualified immunity protections. Further, respondents contend that petitioners failed to allege any facts that would allow the inference that such statements, even if untrue, were made with the requisite "malice" required to lose the qualified privilege. We agree.

Based upon our review of the record before us, and under the guidance of *Crump*, we find that whether a statement is false is not relevant in considering a qualified privilege. In their complaint, petitioners admit that Respondents Heitz and Layman are security guards for the Club. Further, the only allegedly defamatory statements referenced in the complaint were statements made by Heitz or Layman to either the membership of the Club in general (at a membership meeting) or to the Club's board of directors. Consequently, the alleged defamatory statements consist solely of statements by employees and members of the Club to the Club's Board of Directors or general membership regarding the performance of their job and Club business. Accordingly, the lower court properly did not consider the alleged truth or falsity of the statement.

Further, we find no merit in petitioners' assertion that, in their complaint, they sufficiently pled "malice" and "bad intent" with respect to their claim of defamation.[8] Petitioners cannot now assert new facts as a way to justify their defective pleading. In *DeVane v. Kennedy*, 205 W.Va. 519, 519 S.E.2d 622 (1999), we held that this Court's appellate review is limited to the record presented on appeal. For the purposes of this appeal, petitioners assertions that the security guards' statements were malicious or made with bad intent in their appellate brief do not remedy the fatal defects in petitioners' complaint and cannot now be added to the record.

Petitioners advance a similar argument with regard to their claim that respondents' conduct constituted intentional infliction of emotional distress.[9] We have held that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for bodily harm." Syl. Pt. 6, *Harless v. First National Bank in Fairmont*, 169 W.Va. 673, 289 S.E.2d 692 (1982). We have consistently held that conduct that is sufficient to support a claim for outrage must meet a very high bar. *See Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 497 S.E.2d 174 (1997); *Keyes v. Keyes*, 182 W.Va. 802, 392 S.E.2d 693 (1990). Even taking petitioners' allegations at their face value, they fail to allege a cognizable claim for intentional infliction of emotional distress. Petitioners have not alleged any facts to show that Respondents Heitz and Layman's "conduct was atrocious, intolerable, and so extreme and

---

[8]The only reference to "malice" in petitioners' compliant is the use of the word "malicious" in describing the context of petitioner's claim for intentional infliction of emotional distress, and an additional use of the word "malicious" in describing their claim for attorney's fees.

[9]Petitioners liken the conduct of the Club's Board of Directors in dealing with petitioners to that of how an American citizen would be treated in Libya, Syria, Iran, or Iraq.

outrageous as to exceed the bounds of decency." Syl. Pt. 3, in part, *Travis v. Alcon Laboratories, Inc.*, 202 W.Va. 369, 504 S.E.2d 419 (1998).

As respondents note, in *Courtney v. Courtney*, 186 W.Va. 597, 413 S.E.2d 418 (1991), the determination as to whether the outrageous conduct alleged by the plaintiff is legally sufficient to support a claim for intentional infliction of emotions distress is a question of law for the Court. In *Courtney*, we found that a claim of outrage requires actions exceed all bounds of human decency. Here, petitioners were members of a popular hunting Club and simply disagree with the revocation of their memberships. Such allegations are not sufficient to constitute the tort of intentional infliction of emotional distress. Accordingly, we find no error in the circuit court's granting of respondents' motions to dismiss.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II